# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 10, 2012

No. 10-20859

Lyle W. Cayce
Clerk

DAVIS-LYNCH, INC.,

Plaintiff-Appellee

v.

JOSE ALFREDO MORENO d/b/a HANNA-SKYE and ACCURATE and RONALD WAYNE PUCEK,

Defendants-Appellants

---

Appeals from the United States District Court
for the Southern District of Texas

---

Before KING, JOLLY, and WIENER, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellee Davis-Lynch, Inc. ("Davis-Lynch" or the "Appellee") filed a lawsuit against several defendants, including Defendant-Appellants Jose Alfredo Moreno ("Moreno") and Ronald Wayne Pucek, III ("Pucek") (collectively the "Appellants"), seeking injunctive relief and damages pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"), and Texas law. Both of the Appellants initially asserted their Fifth Amendment privilege against self-incrimination in their answers to Davis-Lynch's complaint. After Davis-Lynch moved for summary judgment against a number of defendants, including the Appellants, Moreno and Pucek each filed

No. 10-20859

a response asserting that he had waived or was waiving his Fifth Amendment privilege, and each attached an affidavit denying Davis-Lynch's accusations. The district court issued an order denying the Appellants' respective withdrawals of their Fifth Amendment privilege and striking their respective affidavits. The district court then granted summary judgment for Davis-Lynch against all of the defendants, including Moreno and Pucek. The Appellants now appeal the district court's grant of summary judgment and order denying the Appellants' withdrawal of their Fifth Amendment privilege against self-incrimination and striking their affidavits. We affirm the district court's denial of Pucek's withdrawal of his Fifth Amendment privilege, but reverse the district court's denial of Moreno's withdrawal of his Fifth Amendment privilege. We also reverse and remand the court's summary judgment with respect to both of the Appellants.

## I. Facts & Proceedings

### A. Facts

Davis-Lynch is a designer, manufacturer, and marketer of cementing and floating equipment for the oil field industry. Nancy Moreno ("Nancy"), an employee of Davis-Lynch, was in charge of accounts payable and accounts receivable for the company. Moreno has been married to Nancy since August 16, 2008 and Pucek is married to Nancy's daughter. Relatives of Nancy, including her daughter, worked under her supervision at Davis-Lynch.

After discovering that one of its copy machines was located at facilities owned or operated by Nancy's son, Davis-Lynch undertook an investigation into the accounts payable that Nancy managed. According to its complaint, Davis-Lynch discovered through its investigation that Nancy and several others had embezzled millions of dollars from Davis-Lynch. Specifically, Davis-Lynch alleges that Nancy and other Davis-Lynch employees issued checks on Davis-Lynch's accounts payable to various entities and individuals that were not

No. 10-20859

entitled to any funds, including to Pucek and to Moreno and his company, Hanna-Skye, Inc. ("Hanna-Skye").

**B. Proceedings**

Davis-Lynch filed a lawsuit against more than 20 defendants, including Moreno and Pucek, seeking injunctive relief and damages pursuant to RICO and Texas law.[1] In their initial answers to the complaint, Moreno and Pucek each invoked his Fifth Amendment privilege against self-incrimination. Thereafter, during a contempt hearing held on September 13, 2010, Moreno waived his Fifth Amendment privilege in open court and answered questions from Davis-Lynch's attorney. The transcript of the hearing reflects the following exchange:

Q [Attorney for Davis-Lynch]: Now, you previously pled the Fifth in this case. You're aware of that?

A [Moreno]: Yes, sir.

Q: And you have withdrawn, I take it, your plea to the Fifth Amendment right?

A: Looks that way.

During this hearing, Davis-Lynch's attorney asked Moreno substantive questions regarding his knowledge of the sources from which Nancy obtained her

---

[1] Specifically, Davis-Lynch argued in its motion for summary judgment that each of the defendants violated RICO provisions 18 U.S.C. § 1962(a), (c) and (d). Davis-Lynch also alleged that the defendants committed state law violations of (1) theft under Tex. Penal Code § 31.03,(2) common law fraud and misrepresentation, (3) common law breach of fiduciary duty, (4) common law conversion, and (5) common law civil conspiracy. As further discussed below, the district court's order granting summary judgment is not entirely clear, but it appears that, with respect to Moreno and Pucek, the district court granted summary judgment to Davis-Lynch on each of its RICO claims, as well as on common law civil conspiracy.

funds and whether he knew that funds provided to his company, Hanna-Skye, were embezzled.

A month later, on October 13, 2010, Davis-Lynch filed a motion for summary judgment against most of the defendants, including Moreno and Pucek. Specifically, Davis-Lynch requested that the district court hold that each of the defendants, including Moreno and Pucek, had committed both substantive RICO violations[2] and had participated in a RICO conspiracy[3], as well as several violations under Texas statutes and common law, including (1) statutory theft[4], (2) common law fraud and misrepresentation, (3) common law civil conspiracy, (4) common law breach of fiduciary duty, and (5) common law conversion, misappropriation, and imposition of constructive trust.

Davis-Lynch's motion for summary judgment contained few specific references to both Moreno and Pucek. Instead of discussing specific defendants, Davis Lynch stated generally that all defendants were culpable under each claim. Davis-Lynch further noted that each of the defendants had asserted his Fifth Amendment privilege against self-incrimination, but did not expressly address Moreno's withdrawal of his Fifth Amendment privilege during the contempt hearing.

In support of its motion for summary judgment, Davis-Lynch attached an expert report and affidavit of Charles C. Cummings, the examiner it had hired to investigate its account payables. In his affidavit, Cummings states that "it is my opinion that the defendants against whom summary judgment is sought were responsible for the loss of $15,000,000 by Davis-Lynch, Inc." Although, as stated by Davis-Lynch, Cummings' expert report (the "Cummings report") is

---

[2]  18 U.S.C. § 1962(a) and (c).

[3]  18 U.S.C. § 1962(d).

[4]  TEX. PENAL CODE § 31.03.

No. 10-20859

"the best summary of the evidence of appellants' involvement . . .", it also provides only broad generalizations and but a very few specific details regarding Moreno and Pucek.[5]

The only detailed and undisputed facts in the report with respect to Moreno are that Nancy created at least one false entry in Davis-Lynch's records indicating that Hanna-Skye received a Davis-Lynch machine for which it did not pay. Specifically, the report states that, on one occasion, Nancy noted the sale of a machine from Davis-Lynch to Hanna-Skye in the amount of $8,000. In reviewing the entries and checks deposited, however, the report contends that the only consideration received by Davis-Lynch in payment for the machine were actually scrap and metal payments, not checks from Hanna-Skye in payment for the machine.[6]

With respect to Pucek, the report states that Davis-Lynch's records reflect that it paid Pucek over $96,000.00 after 2006. The report further states that Nancy instructed a Davis-Lynch employee to create some of the entries and quotes that employee as stating that she does not know if Pucek "actually did the work." The report also quotes the "Plant Supervisor" at Davis-Lynch who states that Pucek's last job was performed sometime in 2005 or 2006. The report

---

[5] Pucek contends that Cummings report should not be considered because it is unsworn and contains hearsay. Without deciding this issue, we note that both Pucek and Moreno likely waived any objection to the report because neither objected to the Cummings report in the district court. Nonetheless, as discussed below, even if the Cummings report is considered, Davis-Lynch has not presented evidence sufficient to show that it is entitled to judgment as a matter of law.

[6] The report also states that "[t]here is also a potential overbilling and/or false invoices from Hanna-Skye, Inc. to Davis-Lynch for about $55,000, but that investigation is not complete pending additional discovery from Hanna-Skye, Inc." The report does not provide any further detail with respect to this assertion. It should also be noted that the report contains other references to Moreno, stating that he bought expensive boats, cars and other property, and claims that it has traced over $2,000,000 moved from the Morenos' joint bank accounts to Hanna-Skye. These statements, without more, do not indicate that Moreno was part of a scheme to obtain funds illegally from Davis-Lynch.

contends that several of the Davis-Lynch checks are traceable to Pucek and his wife's bank accounts, but notes that its analysis is not yet final.

Moreno and Pucek do not deny that they received illegally obtained funds or materials from Davis-Lynch. They simply deny that they knew that the funds were embezzled and claim that they understood the funds came from legitimate sources, *i.e.* Nancy's life savings and inheritance or settlement money that Nancy received after the death of her first husband. Therefore, at most, the report's undisputed facts are essentially that Pucek was paid by Davis-Lynch for work that he did not perform, and that Moreno's company, Hanna-Skye, received a machine for which it did not pay.

Both Moreno and Pucek filed responses to Davis-Lynch's motion for summary judgment. Moreno stated that he had already waived his Fifth Amendment privilege, and Pucek stated that he was waiving the privilege currently in response to the motion. In addition, each Appellant filed an accompanying affidavit denying Davis-Lynch's claims. Davis-Lynch then filed a motion to strike Moreno and Pucek's affidavits, objecting to their withdrawal of their Fifth Amendment privilege. The district judge granted Davis-Lynch's motion to strike both Moreno's and Pucek's affidavits, stating in regard to both of the Appellants that their respective waivers of privilege "do[ ] not overcome [their] earlier and consistent refusal to participate in discovery during the designated period of pre-trial proceedings."

The district court then granted Davis-Lynch's motion for summary judgment as to all defendants, stating that "Davis-Lynch has established a RICO violation and conspiracy on the part of Nancy and the defendants to defraud Davis-Lynch."[7] The district court also stated that all of the defendants "aided and abetted Nancy in engaging in "theft, fraud and misrepresentation,

---

[7] It appears that the district court held Moreno and Pucek liable for substantive violations of RICO under 18 U.S.C. § 1962(a) and © and a RICO conspiracy under § 1962(d).

conversation, misappropriation of funds and breach of a fiduciary duty owed by Davis-Lynch." In granting Davis-Lynch's motion for summary judgment, the district court noted that it had struck Moreno's and Pucek's responses and that it accepted Davis-Lynch's version of the facts as true. This appeal followed.

## II. Withdrawal of Fifth Amendment Privilege

### A. Standard of Review

A district court's order denying a party's withdrawal of a previously asserted Fifth Amendment privilege in a civil case is reviewed for abuse of discretion.[8] "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence."[9]

### B. Withdrawal

This court has not ruled on whether and under what circumstances a party may withdraw its invocation of the Fifth Amendment privilege against self incrimination in a civil case. Multiple Circuits, however, have addressed this issue, noting that it is dependent on the particular facts and circumstances of each case.[10]

---

[8] *See United States v. Certain Real Prop. and Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d 78, 85 (2d Cir. 1995) (holding that district court did not abuse its discretion in denying a withdrawal of Fifth Amendment privilege.); *Gutierrez-Rodriguez v. Cartegena*, 882 F.2d 553, 577 (1st Cir. 1989) (district court acted within its discretion in not permitting defendant to withdraw invocation of Fifth Amendment privilege and testify at trial.).

[9] *United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008) (citations omitted).

[10] *See Evans v. City of Chicago*, 513 F.3d 735, 743 (7th Cir. 2008); *United States v. Certain Real Prop. and Premises Known as: 4003-4005 5th Ave.,Brooklyn, N.Y.,* 55 F.3d 78, 85 (2d Cir. 1995); *Edmond v. Consumer Prot. Div.*, 934 F.2d 1304, 1309-10 (4th Cir. 1991); *United States v. Parcels of Land*, 903 F.2d 36 (1st Cir. 1990); *SEC v. Graystone Nash, Inc.*, 25 F.3d 187, 191 (1st Cir. 1989).

No. 10-20859

As a preliminary matter, it should be noted that a party may invoke the privilege against self-incrimination in a civil proceeding.[11] Accordingly, a party may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents.[12] The Supreme Court has cautioned that the Constitution limits "the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly.'"[13] Given this consideration —— and because all parties should have a reasonable opportunity to litigate a civil case fully —— courts should seek out ways to permit "as much testimony as possible to be presented in the civil litigation, despite the assertion of the privilege."[14]

In addition, this court has held that, when there are competing interests posed by an invocation of the Fifth Amendment, a court should measure "the relative weights of the parties' competing interests with a view toward accommodating those interests, if possible".[15] Accordingly, Circuit Courts have weighed the specific facts of each case in which a civil litigant has attempted to withdraw his invocation of the Fifth Amendment privilege.

---

[11] *See Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973) (noting that the Fifth Amendment allows an individual "not to answer official questions put to him in any . . . proceeding, civil or criminal, formal or informal, where the answer might incriminate him in future criminal proceedings.")

[12] *See* 8 CHARLES A. WRIGHT, ARTHUR R. MILLER AND RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2018, 273 (3d ed. 2005).

[13] *Spevack v. Klein*, 385 U.S. 511, 515 (1967) (citation omitted).

[14] *Certain Real Prop.*, 55 F.3d at 84.

[15] *Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1088 (5th Cir. 1979). (noting that the plaintiff's assertion of Fifth Amendment privilege during discovery did not automatically require dismissal of his libel action where other, less burdensome remedy could prevent unfairness to the defendant).

No. 10-20859

Generally, "[t]he court should be especially inclined to permit withdrawal of the privilege if there are no grounds for believing that opposing parties suffered undue prejudice from the litigant's later-regretted decision to invoke the Fifth Amendment."[16]  Conversely, withdrawal is not permitted if the litigant is trying to "abuse, manipulate or gain an unfair strategic advantage over opposing parties."[17]  The timing and circumstances under which a litigant withdraws the privilege are relevant factors in considering whether a litigant is attempting to abuse or gain some unfair advantage.

For example, some Circuits have not allowed a litigant to withdraw the privilege when he invoked the privilege throughout discovery and then sought to withdraw the privilege either to support or defend against a motion for summary judgment.[18]  In denying a litigant's attempt to withdraw the privilege under these circumstances, the Circuit Courts indicated concern that the litigant appeared to be using the privilege to gain an unfair advantage.  Generally, withdrawing the Fifth Amendment privilege at a late stage places the opposing party at a significant disadvantage because of increased costs, delays, and the need for a new investigation.[19]  Furthermore, a litigant who provides previously

---

[16] *Certain Real Prop.*, 55 F.3d at 84 (citations omitted).

[17] *Id.*

[18] *United States v. Certain Real Prop. and Premises Known as: 4003-4005 5th Ave.,Brooklyn, N.Y.*, 55 F.3d 78, 85 (2d Cir. 1995) (affirming district court's holding that defendant who invoked Fifth Amendment privilege throughout discovery could not withdraw privilege and respond to government's motion for summary judgement); *Edmond v. Consumer Prot. Div.*, 934 F.2d 1304, 1308-09 (4th Cir. 1991) (affirming district court's striking of summary judgment affidavit offered in support of summary judgment motion when movant had invoked Fifth Amendment privilege during discovery deposition); *United States v. Parcels of Land*, 903 F.2d 36, 44-45 (1st Cir. 1990) (affirming decision of district court to strike affidavit offered in opposition of government's motion for summary judgment when non-movant invoked Fifth Amendment privilege at deposition).

[19] *Certain Real Prop.*, 55 F.3d at 86; see also *SEC v. Graystone Nash, Inc.*, 25 F.3d 187, 191 (1st Cir. 1989) (describing disadvantages when a party withdraws previous assertion of Fifth Amendment privilege on the eve of trial.)

withheld information at summary judgment places the opposing party at a significant disadvantage in responding to such information.[20]

On the other hand, a party may withdraw its assertion of the Fifth Amendment privilege, even at a late stage in litigation, if circumstances indicate that (1) the litigant was not using the privilege in a tactical, abusive manner, and (2) the opposing party would not experience undue prejudice as a result.[21] In one case, the Third Circuit reversed a district court's order for summary judgment when the district court had precluded defendants from defending against the motion by withdrawing their assertion of the Fifth Amendment privilege.[22] In reaching its conclusion that the defendants had not used the privilege in an abusive manner and that the SEC was not unduly prejudiced by withdrawal of the privilege, the court noted that the defendants were pro se and were unaware of the consequences of asserting the privilege. The court also noted that the SEC had collected a great deal of evidence during discovery, including 30,000 documents that one defendant had provided.[23]

Similarly, the Seventh Circuit upheld a district court's decision to allow defendants who had previously invoked the Fifth Amendment privilege during discovery to withdraw the privilege and testify at trial. In reaching its decision, the appellate court noted that it "does not appear to us that the defendants were

---

[20] *Certain Real Prop.*, 55 F.3d at 86 (noting that the defendant withdrew privilege to defend against summary judgment motion); *Edmond*, 934 F.2d at 1308 (observing that, in withdrawing assertion of Fifth Amendment privilege at summary judgment, the plaintiff "attempted to insure that his unquestioned, unverified affidavit would be the only version."); *Parcels of Land*, 903 F.2d at 45 (stating that the defendant's "sudden change of mind" seemed to be instigated by his "realization that the court was not going to consider his affidavit in light of his refusal to answer deposition questions").

[21] *Graystone Nash*, 25 F.3d at 193.

[22] *Id.* at 191.

[23] *Id.* at 193-94.

No. 10-20859

gaming the system" because they sought to withdraw their invocation of the privilege around the time that the prosecutor "was wrapping up his probe" in the criminal case.[24]  Therefore, a party may withdraw its invocation of the Fifth Amendment privilege, even at a late stage in the process, when circumstances indicate that there is no intent to abuse the process or gain an unfair advantage, and there is no unnecessary prejudice to the other side.

## C. Moreno

Moreno waived his privilege more than a month before the discovery deadline, providing Davis-Lynch with several weeks during which to attempt to re-take his deposition.[25]  Although his withdrawal of the privilege meant that Davis-Lynch would incur some additional costs by taking Moreno's deposition, this prejudice is likely outweighed by the fact that (1) Davis-Lynch had several weeks to depose Moreno before the discovery deadline and (2) doing so would allow as much testimony as possible to be presented in the instant litigation. The Supreme Court has cautioned against making invocations of the Fifth Amendment privilege against self-incrimination unnecessarily burdensome to the defendant, and the district court accordingly erred in denying Moreno's attempt to withdraw his assertion of the privilege more than a month before the discovery deadline.

## D. Pucek

Pucek contends that the district court erred in striking his affidavit because he withdrew his assertion of the Fifth Amendment privilege within the time allowed to respond to Davis-Lynch's motion for summary judgment.  Pucek also insists that little prejudice would result to Davis-Lynch because there were five days left in the discovery period at the time that Pucek withdrew his

---

[24] *Evans*, 513 F.3d at 746.

[25] Moreno waived the privilege during a hearing on September 13, 2010, and the discovery deadline was October 31, 2011.

11

privilege, and that, at most, Davis-Lynch would have had "to take two depositions in one week."

Unlike Moreno's withdrawal, however, Pucek's withdrawal of his Fifth Amendment privilege in response to Davis-Lynch's motion for summary judgement appears more likely to be an attempt to abuse the system or gain an unfair advantage. Like the parties that attempted to withdraw their assertion of the privilege in *United States v. Certain Real Prop. and Premises Known as: 4003-4005 5th Ave.,Brooklyn, N.Y.*, 55 F.3d 78 (2d Cir. 1995), *Edmond v. Consumer Prot. Div.*, 934 F.2d 1304 (4th Cir. 1991), and *United States v. Parcels of Land*, 903 F.2d 36 (1st Cir. 1990), Pucek invoked his Fifth Amendment privilege throughout the discovery process, only to withdraw his assertion in the face of a motion for summary judgment. In withdrawing the privilege at such a late stage, Pucek withheld information that Davis-Lynch could have used in its investigation, only to provide information at the last moment, leaving Davis-Lynch at a disadvantage. Unlike the situation as to Moreno, Davis-Lynch had less than a week to depose Pucek before the close of the discovery period. Given Pucek's eleventh-hour withdrawal of his Fifth Amendment privilege and the cost and delay that Davis-Lynch would incur as a result, we are satisfied that the district court did not abuse its discretion in denying Pucek's withdrawal, and we affirm that denial.

## III. Motion Summary Judgment

### A. Standard of Review

We review a district court's grant of summary judgment *de novo*, applying the same legal standards as the district court.[26] Summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant

---

[26] *United States v. Caremark, Inc.*, 634 F.3d 808, 814 (5th Cir. 2011).

is entitled to judgment as a matter of law."[27]  A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant.[28]  "[A]ll facts and evidence must be taken in the light most favorable to the non-movant."[29]  To avoid summary judgment, however, the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial.[30]  We are "not limited to the district court's reasons for its grant of summary judgment" and "may affirm the district court's summary judgment on any ground raised below and supported by the record."[31] The moving party has the burden of establishing that there is no genuine dispute of material fact; and, unless that party does so, a court may not grant the motion, regardless whether any response is filed.[32]

## B. RICO Substantive Holding:  § 1962(a)

RICO creates a civil cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 . . . ."[33]  18 U.S.C. § 1962(a) states:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income,

---

[27]  FED. R. CIV. P. 56(c).

[28]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248(1986).

[29]  *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007).

[30]  *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir.2006).

[31]  *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 478 (5th Cir. 2008).

[32]  *Hibernia Nat'l Bank v. Admin Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).

[33]  18 U.S.C. § 1964(c).

No. 10-20859

in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

To establish a claim under § 1962(a), a plaintiff must show that its injuries resulted from the investment or use of racketeering proceeds.[34] In other words, injuries resulting from predicate acts of "racketeering activity"[35] themselves cannot form the basis of an investment injury for purposes of § 1962(a). Instead, the court must determine whether the injuries asserted were the result of the predicate acts or of the investment of racketeering proceeds into a RICO enterprise.[36]

In this case, Davis-Lynch has not shown that it was injured from the investment of the alleged racketeering proceeds. As previously stated, the only undisputed facts presented by Davis-Lynch appear to be that (1) Pucek received and deposited checks from Davis-Lynch for work he did not perform, and (2) Moreno, through Hanna-Skye, received a machine for which neither he nor his company paid. Davis-Lynch does not discuss or a present facts regarding how these alleged racketeering proceeds (*i.e.*, the money received by Pucek and the machine received by Hanna-Skye) were then invested in any enterprise. Furthermore, even if Davis-Lynch were able to show that these alleged proceeds were then invested in an enterprise, it still has not asserted or presented facts showing the necessary next step, *viz.*, how it was injured by the *investment* of the proceeds. Specifically, Davis-Lynch has not shown how Pucek's alleged deposit

---

[34] *See Parker & Parsley Petroleum v. Dresser Indus.*, 972 F.2d 580, 584 (5th Cir. 1992).

[35] Section 1961(1) defines "racketeering activity" as constituting a number of enumerated offenses. To establish that a person engages in "a pattern of racketeering activity", the individual must have committed at least two crimes listed under 18 U.S.C. § 1961(1). 18 U.S.C. § 1961(5).

[36] *St. Paul Mercury Inc. Co. v. Williamson*, 224 F.3d 425, 443 (5th Cir. 2000).

14

of the funds paid to him after 2006 and Hanna-Skye's acquisition or use of the machine noted in Davis-Lynch's records actually injured Davis-Lynch. At most, Davis-Lynch has shown only that the payment of money to Pucek for work that he did not perform and the removal of one of its machines without payment harmed Davis-Lynch, stating only that "stolen funds" were in the amount of $15,072,474.92. Accordingly, the district court erred by holding that Pucek and Moreno were liable for substantive civil RICO violations under this provision.

## C. RICO Substantive Holding: § 1962©

18 U.S.C. § 1962© states:

> "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

To "participate, directly or indirectly, in the conduct of such enterprise's affairs", an individual must have some part in the operation or management of the enterprise itself.[37] An enterprise may be "operated" or "managed" by those not employed by the enterprise if they exert control over it as, for example, by bribery.[38]

Davis-Lynch has failed to show that it was entitled to summary judgment with respect to this provision because it has not presented facts to demonstrate that either Moreno or Pucek "operated" or "managed" the enterprise under the instant case. Receiving funds or materials on its own, without more, does not show that Moreno or Pucek actually operated the scheme to obtain those funds or materials. As there is nothing in the Cummings report showing that Pucek or Moreno had any control over the enterprise to embezzle funds from Davis-

---

[37] *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).

[38] *Id.* at 184.

No. 10-20859

Lynch, the district court erred in granting summary judgment to Davis-Lynch against Pucek and Moreno or his company for substantive violations of RICO with respect to this provision.

## D.  RICO Conspiracy Holding:  § 1962(d)

Subsection (d) of § 1962 provides for a RICO conspiracy, stating that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or © of [§ 1962]."  To demonstrate a civil RICO conspiracy, a claimant must show that : (1) two or more persons agreed to commit a substantive RICO offense, and (2) the defendant knew of and agreed to the overall objective of the RICO offense.[39]

A person need not commit or agree to commit the requisite two or more predicate acts of "racketeering activity" to be held *criminally* liable as a conspirator under RICO.[40]  To have standing to establish a *civil* RICO conspiracy, however, a claimant must allege injury from an act that is independently wrongful under RICO.[41]  Injury caused by acts that are not racketeering activities or otherwise wrongful under RICO will not establish a viable civil RICO claim.[42]

Here, the district court specifically relied on the Supreme Court's holding in *Salinas v. United States*, 522 U.S. 52, 65 (1997) to support holding Moreno and Pucek liable for a civil RICO conspiracy.[43]  Although *Salinas* held that a

---

[39] *Chaney v. Dreyfus Serv. Corp.,* 595 F.3d 219, 239 (5th Cir. 2010) (citation omitted).

[40] *Salinas v. United States*, 522 U.S. 52, 65 (1997).

[41] *Beck v. Prupis*, 529 U.S. 494, 505 (2000).

[42] *Id.*

[43] Specifically, the district court cited  *Salinas,* stating that "a person can be liable for the acts of others engaged in a conspiracy where he/she engages in the conspiracy even by a single act where there is knowledge that a crime has occurred and their conduct furthers the criminal act."

16

defendant need only know of and agree to the overall objective of the RICO offense to be held *criminally* liable for a RICO conspiracy, the Supreme Court's subsequent holding in *Beck v. Prupis*, 529 U.S. 494 (2000) made clear that, "to establish a *civil* RICO conspiracy, a RICO conspiracy plaintiff [must] allege injury from an act that is analogous to an act of tortious character, meaning an act that is independently wrongful under RICO."[44] (emphasis added). Therefore, Davis-Lynch needed to allege injury from an act on the part of Pucek and Moreno that was independently wrongful under RICO.

Furthermore, the Supreme Court observed in *Beck* that "[t]he specific type of act that is analogous to an act of a tortious character may depend on the underlying substantive violation the defendant is alleged to have committed."[45] Noting that it was not expressing a view on this issue, the Supreme Court explained that, for example, when a plaintiff alleges a violation of § 1962(a), it would arguably have to allege injury from the defendant's use or investment of income derived from racketeering activity.[46]

As noted, Davis-Lynch failed to meet its burden showing that it was entitled to summary judgment on its substantive RICO claims under 18 U.S.C. § 1962(a) and ©. In addition, Davis-Lynch failed to present evidence or allege in its motion for summary judgment that either Moreno or Pucek engaged in any of the enumerated predicate acts of "racketeering activity" as listed under 18 U.S.C. § 1961(1).[47] As Davis-Lynch has thus failed to establish injury from an

---

[44] *Beck*, 529 U.S. at 505. (internal quotation and citation omitted).

[45] *Beck,* 529 U.S. at 505.

[46] *Id.* at n.9.

[47] Davis-Lynch contends on appeal that its summary judgment evidence shows that Moreno and Pucek "objectively manifested their intent to directly participate in the RICO enterprise." It also asserts that a pattern of racketeering activity existed in this case because "Nancy committed numerous acts of bank fraud against Davis-Lynch." Although it also states in passing that all of the defendants engaged in "a pattern of racketeering activity", Davis-

act that is independently wrongful under RICO, the district court erred in granting summary judgment to Davis-Lynch with respect to its RICO conspiracy claim.

## E. "Aiding and abetting": Texas statutory and common law violations

The district court's holding with respect to Davis-Lynch's state law claims[48] is not altogether clear. After stating that Nancy is liable for the state claims of "theft, fraud and misrepresentation, conversion, misappropriation of funds, and breach of fiduciary duty," the district court went on to hold that the "individual defendants aided and abetted Nancy's conduct" and were liable as "aiders and abettors" under 18 U.S.C. § 2, the *federal* statute establishing criminal culpability for aiding and abetting offenses against the United States.[49] The district court did not refer to any Texas statutory or common law basis to establish liability.

The district court thus erred in holding that Moreno and Pucek were liable as aiders and abettors of *state* law offenses under a *federal* statute. We are limited in our review of a grant of summary judgment in that we cannot consider newly advanced theories.[50] Nonetheless, because Davis-Lynch claimed in its motion for summary judgment that the defendants were liable for a civil

---

Lynch does not provide any further detail. In its motion for summary judgment, Davis-Lynch simply advanced that all the defendants engaged in "fraudulent invoice recording, check issuance to themselves and false vendors, false entries into the books and records of Davis-Lynch, and the establishment of companies through assumed named certificates' filings in various counties of Texas."

[48] Because Davis-Lynch failed to establish that either Moreno or Pucek engaged in an "overt act", we do not discuss each individual state law claim.

[49] Both Appellants contend that the district court was actually holding that Moreno and Pucek were liable for aiding and abetting RICO substantive violations, and, therefore, the holding was in error as case law establishes that no such cause of action exists. This is a misreading of the district court's order, which simply cites to federal authority as support for holding that the defendants were liable for aiding and abetting state law violations.

[50] 8 WRIGHT & MILLER, *supra* § 2716.

No. 10-20859

conspiracy to violate state law, we may —— and shall —— address the district court's grant of summary judgment with respect to this point.

Under Texas common law, a litigant must prove the following elements to establish a claim for civil conspiracy: (1) two or more persons, (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result.[51]  To establish the required "overt act", a plaintiff must show that the defendant committed an act that, if done alone, would give rise to a cause of action.[52]  And, although a civil conspiracy may be proven by circumstantial evidence,[53] such evidence must constitute more than a mere suspicion.[54]  Vital facts, however, may not be established by piling inference upon inference.[55]  "Some suspicion linked to other suspicion produces only more suspicion, which is not the same as some evidence."[56]  Without rotely addressing each of Davis-Lynch's underlying state law claims, we conclude that it failed to show that either Moreno or Pucek committed an "overt act" to establish a state common law civil conspiracy claim entitling it to summary judgment.

In its motion for summary judgment, Davis-Lynch does not address or discuss the evidence that supports the specific elements required to assert a

---

[51] *Ins. Co. of N. America v. Morris,* 981 S.W.2d 667, 675 (Tex. 1998) (citation omitted).

[52] *Markman v. Lachman,* 602 S.W.2d 350, 352 (Tex. Civ. App. — Texarkana 1980, no pet.).

[53] *Alford v. Thornburg,* 113 S.W.3d 575, 588 (Tex. App. — Texarkana 2003).

[54] *Browning-Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex. 1993.)

[55] *Switzer v. Joseph,* 442 S.W.2d 845, 850 (Tex. Civ. App. — Austin 1969, no. pet.) (holding that proof that defendant received sums knowing they were part of funds of which the plaintiff had been defrauded was so weak that it raised only surmise or suspicion of the fact sought to be established).

[56] *Browning-Ferris,* 865 S.W.2d at 927.

claim of common law civil conspiracy against Moreno and Pucek. Instead, Davis-Lynch claims that its supporting evidence shows that all of the defendants agreed "to set up bogus companies, present bogus invoices, engage in forgeries, all to Davis-Lynch's injury."

With respect to Moreno, again, the Cummings expert report states that Nancy made a false entry indicating that Hanna-Skye paid for a machine, when in fact it had not provided payment. Without more, there is no indication that Moreno created the invoice for the entry or directed that the entry be made. It may be possible to infer that, because his company accepted a machine for which it did not pay, Moreno might have known about the scheme and agreed to it. Nonetheless, such information is not sufficient to provide the basis to infer that Moreno was the one who created the invoice or directed that it be made. The entry itself is suspicious, but without more, this suspicion does not rise to the level of evidence of an overt act on the part of Moreno to obtain funds or materials illegally from Davis-Lynch.

According to the Cummings report with respect to Pucek, a Davis-Lynch employee created entries of invoices in Davis-Lynch's records and claimed that it was at Nancy's instruction. The report also states that Cummings traced checks from Davis-Lynch to the bank accounts of Pucek and his wife (Nancy's daughter). It is tenuous to infer on the basis of this evidence alone that Pucek created or somehow directed that faux invoices be entered in the books of Davis-Lynch. One would have to infer that, because Pucek accepted checks from Davis-Lynch for work that he did not perform, he must have created an invoice for the work or directed employees at Davis-Lynch to create such entries. This is even more tenuous when viewed in light of the report's statement that a Davis-Lynch employee created these entries at the instruction of Nancy. Although it is suspicious that Pucek accepted funds for work that he allegedly

did not perform, suspicion, without more, does not constitute evidence that Pucek engaged in an overt act to illegally obtain funds from Davis-Lynch.

Because of the dubious nature of inferring that Moreno and Pucek committed an overt act to obtain funds or materials from Davis-Lynch illegally, summary judgment should not have been granted with respect to its civil conspiracy claim.

An order that essentially amounts to a default judgment is not appropriate on a motion for summary judgment.[57]   Here, the district court struck the Appellants' affidavits and then appears to have rendered summary judgment against them on the basis that they had not responded to the Davis-Lynch's allegations, without further analysis or consideration.   Such a default-like judgment is not appropriate in this context.  A plaintiff seeking to establish civil RICO claims must meet its burden of establishing the particular elements of each claim, and the district court may not grant summary judgment if the plaintiff has not done so.  Davis-Lynch did not put forth facts to establish its civil RICO and state law claims against the Appellants, relying instead on broad, general statements.  On remand, the district court must allow full discovery so that the factual basis of the Appellee's claims may be established with respect to the Appellants.

## IV.  CONCLUSION

The district court's order denying Pucek's withdrawal of the Fifth Amendment privilege against self incrimination is AFFIRMED.  The district court's denial of Moreno's withdrawal of the Fifth Amendment privilege against self incrimination is REVERSED and REMANDED.  The district court's summary judgment for Davis-Lynch is REVERSED and REMANDED for further proceedings consistent with this opinion.

---

[57] *Hibernia Nat'l Bank v. Admin Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).