# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 24, 2022

Lyle W. Cayce
Clerk

No. 21-20515

Equal Employment Opportunity Commission,

*Plaintiff—Appellant*,

*versus*

Cash Depot, Ltd.,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC Case No. 4:20-CV-03343

Before Higginbotham, Dennis, and Graves, *Circuit Judges*.

Per Curiam:*

The Equal Employment Opportunity Commission appeals the district court's grant of summary judgment to Cash Depot and denial of additional discovery in this action under the Americans with Disabilities Act. *See* 42 U.S.C. §§ 12101, et seq. Because the district court erred in granting summary judgment, we REVERSE and REMAND.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-20515

## FACTS AND PROCEDURAL HISTORY

Cash Depot (CD) is a company that installs and services ATMs and air/vacuum machines. Barney Galloway began working for CD in 2018 as one of two field service technicians responsible for the Houston region.[1]

In February of 2019, Galloway had a stroke at home while off duty. On March 4, 2019, Galloway informed CD that he was getting better but was still unable to return to work and asked about short-term disability. Galloway submitted a doctor's note on March 6 that said he had a follow-up appointment on April 2 to be evaluated for a determination of whether he could return to work. That same day, CD posted a job opening for Galloway's position.

Darlene Lassiter, the director of human resources for CD, sent Galloway a letter on March 13 that said CD had approved a personal, unpaid leave of absence for him until April 3 because he was not yet eligible for leave under the Family Medical Leave Act or for short-term disability. The letter said that CD "agrees to hold your current service technician position open for you until April 3, 2019. However, please understand that Cash Depot cannot guarantee that your position will be available if you are unable to return to work at that time, with or without restrictions." The letter also said that, after April 3, reinstatement would depend on various factors.

On April 2, 2019, CD offered Galloway's field technician position to Michael Negron, who accepted with a tentative start date of April 15, 2019. Also on April 2, Galloway emailed Murphy to inform him that he could return to work with a 25-pound restriction, that he "could do coin empties and do repairs, which was most of the work," and that he had two aneurysms

---

[1] There were also seven to ten other technicians located throughout Texas and five "float" technicians, who filled in as needed for regionally based technicians.

No. 21-20515

which could possibly need treatment in the future. Galloway also inquired as to which day CD wanted him to return to work.

Galloway's doctor submitted a letter on April 3 to CD/Lassiter confirming that he was released to return to work, "however, he is restricted from performing job functions or duties that involve lifting, pushing or pulling items greater than 25 lbs." That same day, Lassiter sent Galloway a letter of termination which stated, in relevant part:

> We received a medical note on April 3, 2019 stating that you can return to work, however, you are restricted from performing job functions that involve lifting, pushing or pulling items greater than 25 lbs with an unknown end date.
>
> After reviewing the medical note, we have determined that due to the nature of your job and the unknown of when you will be able to return to full duty to perform the physical requirements/essential functions of your position, that we **will not** be able to accommodate your restrictions and will be terminating your employment **effective April 3, 2019**.

(Emphasis original). Galloway followed up with an email to Murphy expressing his inability to understand why he would be terminated over a temporary restriction.

As a result of Galloway's termination, the Equal Employment Opportunity Commission (EEOC or the Commission) brought an action under the Americans with Disabilities Act (ADA) against CD alleging that it engaged in unlawful discrimination by firing Galloway because of his disability and failed to reasonably accommodate. CD moved for summary judgment, asserting that: 1) Galloway is not a qualified individual with a disability because a lifting restriction is not a disability under the ADA; 2) the EEOC failed to show that Galloway could perform the essential job functions of field technician with or without reasonable accommodation; and

3

3) Galloway is totally and permanently disabled due to his service-connected disability and is unemployable pursuant to 38 C.F.R. § 4.16.

On July 21, 2021, the district court granted summary judgment for CD, finding that Galloway was unable to perform the essential functions of his job, that no reasonable accommodations were possible, and that it need not infer bad faith from CD's decision to immediately hire a replacement. The EEOC then filed this appeal.

## Standard of Review

This court reviews a district court's grant of summary judgment de novo. *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 520 (5th Cir. 2021). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must "refrain from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

Regarding materiality, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (5th Cir. 1986). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. All facts and evidence must be taken in the light most favorable to the non-movant." *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 549-50 (5th Cir. 2012) (internal marks and citations omitted). Rule 56 does not require the genuine issue of material fact "to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968).

No. 21-20515

## DISCUSSION

### I. Whether the district court erred in granting summary judgment to Cash Depot, defendant-appellee.

Galloway asserts that there are genuine issues of material fact as to whether he was qualified to perform his essential job functions. Specifically, Galloway says that the district court discounted ample evidence that his 25-pound restriction was consistent with the job's demands. Galloway alternatively asserts that a jury could find him qualified because CD could reasonably accommodate his restriction. CD counters that the district court correctly found that no reasonable jury could find that Galloway's medical restriction would allow him to perform the essential functions of his job or that there was a reasonable accommodation.

The ADA prohibits employers from discriminating against qualified employees on the basis of a disability. 42 U.S.C. § 12112(a). Galloway must prove that (1) he has a disability, (2) he is qualified for the job of field technician, and (3) he was subject to an adverse employment decision because of his disability. *EEOC v. LHC Group, Inc.*, 773 F.3d 688, 695-97 (5th Cir. 2014). To be qualified, Galloway must have been able to do the essential functions of a field service technician with or without reasonable accommodation. *See* § 42 U.S.C. § 12111(8).

The district court said that Galloway's testimony regarding his ability to do his job was mere "speculation" which "does not create a fact issue and does not overcome the deference given to Cash Depot's business judgment in how the job is done." The district court also said:

> The Commission also highlights how the job description gives a 20-pound lifting requirement. This may be considered, but it is not conclusive. The court must consider the full range of the facts. It may give deference to Cash Depot's judgment.

5

The company's more experienced workers understood that the technicians would have to lift more than 25 pounds during most of the job's activities - including coin empties, repairs, moves, and replacements.

The Commission considers this speculative. It confuses the burden in the case. It cannot challenge with Galloway's own speculation. It carries the burden to prove the case it brought - not Cash Depot's burden to prove it is not liable.

The Commission does not have the burden to prove its entire case on summary judgment. Instead, CD has the burden of establishing the absence of a genuine issue of material fact. *See* Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) . If CD does that, then the EEOC is required "to go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Catrett*, 477 U.S. at 324 (internal marks omitted). The record establishes that the EEOC did that. What the record does not establish is that no jury could find discrimination.

Further, the district court failed to construe the facts and evidence in the light most favorable to the EEOC, as it is required. *See Davis-Lynch, Inc.*, 667 F.3d at 549-50. Instead, the district court improperly made credibility determinations or weighed the evidence. *See Turner*, 476 F.3d at 343.

The definition of "qualified individual" here includes the following:

For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C. § 12111(8).

No. 21-20515

The district court here not only gave consideration to CD's judgment but also gave deference to it despite contradictory evidence. The district court cited *Credeur v. Louisiana Through Office of the Attorney General*, 860 F.3d 785, 794 (5th Cir. 2017), for the proposition that Galloway's "speculation does not create a fact issue and does not overcome the deference given to Cash Depot's business judgment in how the job is done." Galloway was not merely speculating about his job or whether what he did was essential; he was testifying as to what he actually did on that job on a daily basis. In *Credeur*, this court said that "[w]hile we are mindful that employees can be good sources of information regarding their day-to-day activities and the prerequisites for success on the job, [a]n employee's unsupported testimony that she could perform her job functions from home does not create a genuine dispute of fact to preclude summary judgment." *Id.* at 793 (internal marks and citation omitted). Importantly, this court also said in *Credeur* that, "[o]f course, courts should not give blind deference to an employer's judgment, but should instead evaluate the employer's words alongside its policies and practices." *Id.*

The district court dismissed Galloway's deposition testimony as speculative on the basis that he had only worked for CD for seven months. In doing so, the district court failed to give sufficient consideration to the fact that Galloway's testimony was supported by his doctors and CD's own job description. The relevant portions of the job description for field technician said that the employee would frequently be required to lift up to 20 pounds, carry 2-5 pounds for 20-40 feet, pull or move 400-900 pounds on a dolly and with a winch, and be willing to drive more than 50 percent of a day.[2]

---

[2] Galloway's restriction is 25 pounds, which is more than stated in the job description. The fact that CD may have later changed the job description to include "the

No. 21-20515

As quoted above, "consideration shall be given to the employer's judgment as to what functions of a job are essential." 42 U.S.C. § 12111(8). Consideration – not deference; and the consideration is limited to CD's judgment only as to what functions of a job are essential. But subsection 8 also explicitly states the job description "shall be considered evidence of the essential functions of the job." The district court failed to do that. Moreover, the district court failed to evaluate CD's judgment alongside its policies and practices. As discussed below, the EEOC offered evidence that CD had made similar accommodations for various other employees.

The district court also relied on the standard in *Credeur* for a failure to accommodate claim which states: "A prima facie claim for failure to accommodate requires that: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Id.*, 860 F.3d at 792. The court then found that Galloway was not a qualified individual because he could not perform the essential functions of a field service technician with or without a reasonable accommodation.

A reasonable accommodation may include:

(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

(B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies,

---

ability to bend and lift 50 pounds" is irrelevant because that was not the description for Galloway's position.

8

the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9).

The EEOC asserts that CD could have allowed Galloway to temporarily split coin retrievals into more than one bag, restructured his work to temporarily avoid installations and removals that he rarely performed anyway, or extend his unpaid leave until the restriction was lifted. The district court dismissed any suggestion of splitting coin retrievals as speculative and then speculated that, "[t]his could lead to stolen bags as they would be left unattended." As to restructuring Galloway's work, the district court held that "Cash Depot is not required to hire others to cover or do parts of Galloway's job. Paying someone else to do his work – whether he is also getting paid or not – is not a reasonable accommodation."[3]

The district court found that the Commission failed to identify an accommodation that CD "could have reasonably considered." The court also found that "Galloway has the principal responsibility to engage – merely giving an indefinite limitation at the twilight hour of his leave does not meet that responsibility. Cash Depot also does not have to discuss a reasonable accommodation with Galloway if one does not exist."

But Galloway did engage by notifying CD on the day of his appointment that he had been cleared to return to work with a temporary limitation. CD knew well in advance that Galloway's appointment was scheduled for April 2 and told him that they would hold his position open for him "with or without restrictions" until April 3, 2019. CD also told Galloway that "it could terminate his employment if he were unable to return to work

---

[3] The district court does not explain why others would have to be hired when CD already has employees who serve the function of filling in for others.

by April 3, 2019 or very shortly thereafter." (Internal marks omitted). CD did not hold Galloway's position open until April 3; it held it open until April 2 when it hired Negron to replace him.

The district court said that CD "is not expected to sit on its hands and wait to see if Galloway might be able to return to work. Any responsible company would make alternate plans." The district court further found that making alternate plans does not establish bad faith. As the EEOC asserts, bad faith is not part of the standard. Regardless, one would assume that CD would wait the length of time it agreed to wait in writing rather than hire a replacement the day before Galloway's deadline, then claim it did so because of the accommodation for which it did not yet have notice. The district court also failed to address whether CD made accommodations for other employees.

The EEOC's argument here that it could reasonably prevail on its discriminatory termination claim is supported by the record. Further, as discussed below, the record also supports its reasonable accommodation claim.

Galloway testified at length during his deposition. He said that he was able to work full time and discussed his limitations following his stroke. Galloway maintained that he would have kept working and would not have applied for disability if CD had not fired him. Galloway also testified that he was fired approximately thirty minutes after he notified CD of his temporary restriction.

Galloway reported to Regional Supervisor John Murphy. Murphy also testified regarding Galloway's job description and duties. Murphy's testimony was largely consistent with Galloway's testimony.

Murphy's manager was Brad Mueller, the field services manager. During Murphy's deposition, he was asked about multiple other employees

No. 21-20515

in various areas who had received similar accommodations. In some of those instances, Murphy said that Mueller made the decision to grant or deny the accommodations. But Mueller did not make the decision as to Galloway. Regardless, Mueller was also deposed. Murphy's successor, Joshua Kolodziej, also testified consistent with the other evidence. Kolodziej confirmed that an employee would have the assistance of tools or another worker during heavier jobs. This is consistent with other evidence.

The district court also references Galloway's subsequent disability determinations through the Department of Veteran's Affairs. However, these are two entirely different programs with different determinations and requirements; they are not interchangeable. CD's attempts to muddle the two are without merit.

## Conclusion

The record supports the EEOC's assertion that there are genuine issues of material fact to establish that the district court erred in granting summary judgment. Because the district court erred in granting summary judgment, we REVERSE and REMAND.[4]

---

[4] In doing so, we find it unnecessary to address whether the district court abused its discretion in curtailing discovery. Also, because this matter does not meet "extraordinary" level required for reassignment, we decline to reassign at this time. *See Johnson v. Sawyer*, 120 F.3d 1307, 1333 (5th Cir. 1997).