**Opinion issued March 12, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00607-CV

———————————

## IN RE TERRI COX FERGUSON, Relator

---

**Original Proceeding on Petition for Writ of Mandamus**

---

### DISSENTING OPINION ON REHEARING

Relator, Terri Cox Ferguson, filed a petition for writ of mandamus complaining about the trial court's June 27, 2012 order overruling her assertion of the Fifth Amendment privilege against self-incrimination in the underlying civil suit and compelling her response to certain requests for admissions. We requested and received a response from the real party in interest, Mario Bernal. The majority

denied the petition in an opinion issued January 10, 2013. I dissented. In response to Ferguson's motion for rehearing, the majority reaffirms its denial of the petition for mandamus on the ground that Ferguson has presented insufficient evidence of the potential harm of self-incrimination from the trial court's order compelling her to admit all of the essential facts necessary to prove both the wrongful death claim against her in the underlying suit and her guilt for intoxication manslaughter in the pending criminal proceedings on which Bernal's wrongful death claim is based.

In my view, the majority misconstrues Ferguson's mandamus as seeking a ruling on an evidentiary point peculiar to this case rather than a ruling on a point of law applicable to all civil cases in which a trial court orders a defendant in simultaneous criminal and civil proceedings to admit to all of the elements of the charged crime and all of the elements of a civil claim based on the commission of that crime. It, therefore, erroneously employs a sufficiency of the evidence standard of review rather than a legal one.

I believe the majority opinion contradicts the mandate of both the United States Supreme Court and the Texas Supreme Court that a trial court cannot compel a witness to answer requests for admission in a civil suit unless, after a careful consideration of all the circumstances, it determines that "the answer(s)

2

cannot possibly have [a] tendency to incriminate" her.[1]  I would hold that Ferguson, a defendant in a civil case who is simultaneously subject to ongoing criminal proceedings alleging crimes that form the basis of the civil case, cannot be legally compelled to answer requests for admission of all the facts necessary to prove both the elements of each of the crimes with which she is charged and her liability in the civil case, as her answers would necessarily have a tendency to incriminate her.  Indeed, the requests for admission she is compelled by court order to answer seek nothing but her self-incrimination or the potential basis for a perjury charge.  I would grant the petition for writ of mandamus, and I would provisionally order the trial court to vacate its order.

## Background

Ferguson is the defendant in the underlying wrongful-death lawsuit filed by Bernal, in which Bernal alleges that Ferguson negligently struck and killed his family-member, Gabriela Deyanira, with her car.  Ferguson is also a defendant in criminal proceedings arising from the same underlying events for intoxicated manslaughter, failure to stop and render aid resulting in a fatality, and felony-murder.  In this civil suit, Bernal sent Ferguson twenty-one requests for admission. These requests asked Ferguson to admit the facts and legal duties necessary to establish each of the elements Bernal is required to prove to establish his wrongful-

---

[1]     *Ex parte Butler*, 522 S.W.2d 196, 198 (Tex. 1975) (quoting *Hoffman v. United States*, 341 U.S. 479, 488, 71 S. Ct. 814, 819 (1951)).

death cause of action and to admit the elements going to the ultimate issue of her culpability for each of the crimes with which she is charged.

Specifically, Bernal requested that Ferguson admit that: (1) she "do[es] not contend that any defect or failure on the part of [her] vehicle caused the Incident"; (2) she "do[es] not contend there is a Responsible Third party not named by Plaintiff as a defendant in this lawsuit"; (3) she was "not on any prescription medication at the time of the Incident"; (4) she is "not claiming that [she] suffered from any medical condition immediately prior to the Incident that caused the Incident"; (5) she is "not claiming that [she] suffered from any medical condition immediately prior to the Incident that contributed to causing the Incident"; (6) her "Vehicle was involved in the Incident"; (7) "Gabriela Deyonira Rodriguez was killed as a result of the Incident"; (8) she "suffered no physical injuries as a result of the Incident"; (9) she "did not stop at the scene to render aid following the Incident"; (10) she "did not call 911 at any ti[m]e following the Incident"; (11) she "did not return to the scene of the Incident voluntarily"; (12) she "struck Gabriela Deyonira Rodriguez with [her] Vehicle"; (14) she "failed to maintain a single marked lane of travel at the time of the Incident"; (15) she "failed to drive in a single lane at the time of the Incident"; (16) she "operated [her] Vehicle in a reckless manner at the time of the Incident"; (17) she "failed to control [her] speed at the time of the Incident"; (18) "Gabriela Deyonira Rodriguez did not cause the

4

Incident"; (19) she "owed a duty to Gabriela Deyonira Roriguez to use ordinary care in the operation of [her] Vehicle"; (20) she "breached the duty to use ordinary care in the operation of [her] Vehicle"; and (21) "Gabriela Deyonira Rodriguez sustained fatal injuries in the Incident."[2]

Ferguson asserted her Fifth Amendment privilege against self-incrimination in response to each request individually and, subject to the assertion of the privilege, denied each of the requests. Bernal filed a Motion to Compel Ferguson to respond, and, after two oral hearings, the trial court issued a blanket order overruling all of Ferguson's assertions of her Fifth Amendment privilege without explanation and compelled her to respond to each of Bernal's requests for admission.

### Standard of Review

Mandamus is an extraordinary remedy that is available only when (1) a trial court clearly abuses its discretion and (2) there is no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). With respect to a trial court's determination of legal principles, "a trial court has no 'discretion' in determining

---

[2] Bernal's requests for production did not include a number 13.

what the law is or applying the law to facts." *In re Prudential*, 148 S.W.3d at 135 (quoting *Walker*, 827 S.W.2d at 840).

## Discussion

The United States Constitution and the Texas Constitution both guarantee that a person may not be compelled to testify or give evidence against himself. *See* U.S. CONST. amend. V; TEX. CONST. art. I*, §* 10; *Maness v. Meyers*, 419 U.S. 449, 464, 95 S. Ct. 584, 594 (1975); *In re Commitment of Lowe*, 151 S.W.3d 739, 745 (Tex. App.—Beaumont 2004, pet. denied). The Fifth Amendment can be asserted in both civil and criminal trials "wherever the answer might tend to subject to criminal responsibility him who gives it." *Tex. Dept. of Public Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 760 (Tex. 1995) (quoting *McCarthy v. Arndstein*, 266 U.S. 34, 40, 45 S. Ct. 16, 17 (1924)). Thus it may be asserted to avoid civil discovery if the person invoking it reasonably fears the answer would tend to incriminate him. *Id.*; *see also Wehling v. Columbia Broadcasting Sys.*, 608 F.2d 1084, 1086 (5th Cir. 1979) ("[T]he Fifth Amendment would serve as a shield to any party who feared that complying with discovery would expose him to a risk of self-incrimination.").

In a civil suit, however, the witness's decision to invoke the privilege is not absolute. *In re Speer*, 965 S.W.2d 41, 45 (Tex. App.—Fort Worth 1998, orig. proceeding). Rather, each assertion of the privilege rests on its own circumstances,

and blanket assertions of the Fifth Amendment privilege are not permitted in civil cases. *In re R.R.*, 26 S.W.3d 569, 574 (Tex. App.—Dallas 2000, orig. proceeding); *Speer*, 965 S.W.2d at 45–46. Instead, the privilege must be asserted on a question-by-question basis. *Lowe*, 151 S.W.3d at 745. The trial court is entitled to determine whether assertion of the privilege appears to be based upon the good faith of the witness and is justifiable under all of the circumstances. *Ex parte Butler*, 522 S.W.2d 196, 198 (Tex. 1975); *Speer*, 965 S.W.2d at 45.

"Because the privilege against self-incrimination must be asserted selectively in civil litigation, it follows that selective assertion of the privilege does not result in waiver." *Speer*, 965 S.W.2d at 46. Rather, upon a party's assertion of the Fifth Amendment privilege to a discovery request in a civil suit, the trial court reviews the discovery request, applies the law of privilege, discovery, and protection to the request, and determines how best to protect the privilege, the right to proceed with the case, and the right to defend the suit. *Id.* at 45; s*ee In re R.R.*, 26 S.W.3d at 574. "It is the trial court's duty to consider the witness's evidence and argument on each individual question and determine whether the privilege against self-incrimination is meritorious." *Lowe*, 151 S.W.3d at 745 (quoting *Speer*, 965 S.W.2d at 46). "Before the judge may compel the witness to answer, he must be 'perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer(s) cannot possibly have

7

such tendency to incriminate.'"  *Butler*, 522 S.W.2d at 198 (quoting *Hoffman v. United States*, 341 U.S. 479, 488, 71 S. Ct. 814, 819 (1951)); *Speer*, 965 S.W.2d at 45.

The inquiry by the court is necessarily limited because the witness only has to show that a response is likely to be hazardous to him.  *Speer*, 965 S.W.2d at 45. The witness cannot be required to disclose the very information the privilege protects.  *Butler*, 522 S.W.2d at 198; *Speer*, 965 S.W.2d at 45.  Each question for which the privilege is claimed must be studied, and the court must forecast whether an answer to the question could tend to incriminate the witness in a crime.  *Speer*, 965 S.W.2d at 45.  In some instances, the ramifications of answering the question will be apparent; in others, not so.  *Id.*  It is the latter situation that presents a difficult problem. *Id.*

Generally, the exercise of the privilege should not be penalized.  *See Spevack v. Klein*, 385 U.S. 511, 514, 87 S. Ct. 625, 628 (1967); *Denton*, 897 S.W.2d at 760.  However, because of the difference between the civil and criminal contexts, the United States Supreme Court has allowed juries in civil cases to draw negative inferences based on the assertion of the privilege. *Denton*, 897 S.W.2d at 760 (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S. Ct. 1551, 1558 (1976)); *Speer*, 965 S.W.2d at 46.  For example, an exception to the general free exercise of the self-incrimination privilege in a civil suit, inapplicable in this case, is when the

8

*plaintiff* in a civil suit invokes the privilege *offensively* to protect information that is privileged but also essential to the defense. *Denton*, 897 S.W.2d at 760–61. "A plaintiff who uses the privilege to protect relevant information from a defendant 'use[s] his Fifth amendment shield as a sword.'" *Id.* at 760–61 (quoting *Wehling*, 608 F.2d at 1087). The theory underlying the offensive use of the privilege against self-incrimination is that "a plaintiff who is seeking affirmative relief should not be permitted to maintain the action, and at the same time maintain evidentiary privileges that protect from discovery outcome determinative information not otherwise available to the defendant." *Id.* at 761. In such a case, the general rule against penalizing the assertion of the privilege does not prohibit the trial court from taking acts to ensure that the proceeding remains fair, such as barring the plaintiff asserting the privilege from introducing evidence on the subject matter of the privilege. *Id.* at 760.

In a recent case, the federal Fifth Circuit Court of Appeals held that "a party may invoke the Fifth Amendment privilege during the discovery process to avoid answering . . . requests for admissions," among other discovery procedures. *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 547 (5th Cir. 2012). This opinion accords with the opinion in *Denton*, which applied the law set forth above to deny the protection of privilege for offensive use by a plaintiff in response to requests for admission by defendants in the suit. *See Denton*, 897 S.W.2d at 760–61.

9

Likewise, in *Gordon v. Federal Deposit Insurance Corp.*, the federal Court of Appeals for the District of Columbia Circuit analyzed the application of the privilege against self-incrimination to requests for admission in a civil suit in light of Federal Rule of Civil Procedure 36(b), which, like the parallel Texas rule, Texas Rule of Civil Procedure 198.3, provides that a response to a request for admission "cannot be used against the party in any other proceeding." 427 F.2d 578, 581 (D.C. Cir. 1970) (citing FED. R. CIV. P. 36(b)). Reasoning that the responses could be used "as a confirmation that facilitates the preparation of the criminal case, or perhaps as a lead to other evidence, which is part of the protection of the constitutional privilege," the federal court of appeals held that the constitutional right of a party to a civil suit not to incriminate himself applies to requests for admission in a civil suit and that the protection afforded by the prohibition in Rule 36 is insufficient to protect that right. *Id.*

Thus, both the United States Supreme Court and the Texas Supreme Court have held that the Fifth Amendment can be asserted in both civil and criminal trials "wherever the answer might tend to subject to criminal responsibility him who gives it." *McCarthy*, 266 U.S. at 40, 45 S. Ct. at 17; *Denton*, 897 S.W.2d at 760. Both federal and Texas state courts have also held that the privilege may be asserted to avoid civil discovery if the person invoking it reasonably fears the

answer would tend to incriminate him. *Denton*, 897 S.W.2d at 761; *see Wehling*, 608 F.2d at 1087.

Here, Ferguson asserted the privilege against self-incrimination on a question-by-question basis, in accordance with both federal and state constitutional law. *See, e.g.*, *Lowe*, 131 S.W.3d at 745. The trial court was obligated to determine whether her assertion of the privilege appeared to be based upon good faith and was justifiable under all of the circumstances. *See Butler*, 522 S.W.2d at 198; *Speer*, 965 S.W.2d at 45. Although the parties agree that the trial court held two hearings on Ferguson's assertion of the privilege, the mandamus record contains no indication that the trial court reviewed each discovery request, applied the law of privilege, discovery, and protection to the request, and determined how best to protect the privilege, Bernal's right to proceed with the case, and Ferguson's right to defend herself against his suit. *See In re R.R.*, 26 S.W.3d at 574; *Speer*, 965 S.W.2d at 45. Nor is there any evidence that the trial court exercised its "duty to consider the witness's evidence and argument on each individual question and determine whether the privilege against self-incrimination is meritorious." *See Lowe*, 151 S.W.3d at 745 (quoting *Speer*, 965 S.W.2d at 46).

Rather, the record shows that, although each request for admission went to proof of the ultimate questions of Ferguson's liability to Bernal for Rodriguez's wrongful death or of Ferguson's guilt in the criminal case, the trial court issued a

11

blanket order, without exception or explanation, denying Ferguson the privilege against self-incrimination and granting each of Bernal's demands that Ferguson be forced to answer his requests that she admit the elements of his suit and the crimes with which she is charged. The ramifications of requiring Ferguson to answer Bernal's questions without the protection of the privilege are apparent. Bernal is plainly asking Ferguson to subject herself to criminal responsibility and is seeking to deny her the privilege against self-incrimination in response to requests for admission that go directly to proof of the elements of Bernal's wrongful death suit and to proof of the criminal charges outstanding against her. *See Speer*, 965 S.W.2d at 45.

I would hold that the trial court's order denying Ferguson the privilege against self-incrimination and requiring her to answer Bernal's requests for admission is so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *See Walker*, 827 S.W.2d at 839. Therefore, I would hold that the trial court clearly abused its discretion in ordering Ferguson to answer Bernal's requests for admission. *See id.*

Bernal argues, however, that federal and state constitutional law is "superseded by Texas Rule of Civil Procedure 198.3 with regard to requests for admissions." Thus, he argues, while federal courts have allowed the Fifth Amendment privilege to be invoked in response to requests for admissions, Texas

12

courts have not allowed invocation of the privilege because, under the wording of Rule 198.3, their responses cannot be used in "any other proceeding." Specifically, he argues that, regarding requests for admissions, the Texas Rules of Civil Procedure provide that "[a]ny admission made by a party under this rule may be used solely in the pending action and not in any other proceeding." TEX. R. CIV. P. 198.3; *cf.* FED. R. CIV. P. 36(b) ("An admission under this rule is not an admission for any other purpose and cannot be used against the party in any other proceeding."). As support for his argument, Bernal cites to *Speer* and *Katin v. City of Lubbock*, 655 S.W.2d 360 (Tex. App.—Amarillo 1983, writ ref'd n.r.e.). Bernal's argument, in my view, is without merit.

First, it is well established in Texas law that, "[w]here the parties have not argued that there are any material differences between the state and federal versions of a constitutional provision, we typically treat the two clauses as congruent." *City of Dallas v. VSC, LLC*, 347 S.W.3d 231, 234 n.3 (Tex. 2011); *see also Sheffield Dev. Co. v. City of Glenn Heights*, 140 S.W.3d 660, 669 (Tex. 2004) (stating that, in applying provisions of state and federal constitutions that are not significantly different, Texas courts "look to federal jurisprudence for guidance"). Here, Texas courts have historically cited to both state and federal law in applying both the Fifth Amendment to the United States Constitution and the parallel provision in the Texas Constitution, article 1, section 10. *Lowe*, 151 S.W.3d at 745

13

(stating that both United States and Texas Constitution "guarantee a person may not be compelled to testify or give evidence against himself") (citing *Maness*, 419 U.S. at 464, 95 S. Ct. at 594); *see Butler*, 522 S.W.2d at 198.

Second, Bernal's construction of *Katin* and *Speer* is not supported by a reasonable reading of either case. In *Katin*, the defendant business owner, Katin, was permanently enjoined from maintaining a portable sign on his business premises in violation of a city zoning ordinance. 655 S.W.2d at 361. Katin answered interrogatories, but he refused to answer requests for admissions of fact on the basis of his Fifth Amendment privilege, arguing that a violation of a zoning ordinance can also be punished by criminal sanctions. *Id*. at 362. The court observed,

> Because the rule language [in former Texas Rule of Civil Procedure 169, precursor to current Rule 198.1] prevents the requested admissions, if made, from being used against the answerer in any other proceeding, the Federal courts have held that the claim of a privilege against self-incrimination is unavailing as a reason to refuse to answer a request of admissions of act in a civil injunctive action . . . or in an action that involves only civil sanctions imposed as deterrents rather than punishment.

*Id*. at 363 (citing *Sec. & Exch. Comm'n v. MacElvain*, 417 F.2d 1134, 1137–38 (5th Cir. 1969)). The court held that Katin's claim of a Fifth Amendment privilege against self-incrimination was "unavailing as the reason to refuse to either admit or deny the Rule 169 request for admissions of fact in this *civil injunctive action*

14

involving only civil sanctions, because his admissions, if made, could not be used against him in any other proceeding." *Id.* (emphasis added).

*Katin* supports the premise that the privilege against self-incrimination in the civil context is not available to protect a party against discovery necessary to the development of the opposing party's case when the only penalties faced by the party asserting the privilege are a civil injunction and fine, not criminal penalties, and when any answer to the discovery request cannot be used "as a confirmation that facilitates preparation of the criminal case, or perhaps as a lead to other evidence" in any criminal action. *See Gordon*, 427 F.2d at 581. Thus, the privilege against self-incrimination is unavailable as protection against answering requests for admissions in a civil case where the answer cannot reasonably be interpreted as tending to subject the person asserting the privilege to criminal responsibility under the totality of the circumstances. *See Denton*, 897 S.W.2d at 760. Because the only penalties faced by Katin were civil, and he demonstrated no reasonable expectation that his answers would subject him to criminal prosecution, the privilege was unavailable. *Katin* is, therefore, inapplicable to this case, where the admissions the trial court ordered Ferguson to answer go directly to proof of the elements of both the civil action and the criminal charges pending against her.

Nor can *Speer* reasonably be interpreted as supporting Bernal's interpretation of the law. In that case, the trial court found that Speer's answering

five interrogatories in a civil case without asserting the privilege against self-incrimination did not waive his right to assert the privilege against self-incrimination in response to other interrogatories to which he did object; nor did Speer "waive his privilege against self-incrimination by denying the requests for admissions" of fact made by the opposing party without asserting the privilege. 965 S.W.2d at 45–46. The court then stated that former Rule 169 "provides protection to a party in Speer's predicament. . . . Therefore, a party may not assert the privilege against self-incrimination as a reason for refusing to answer requests for admission." *Id.* at 46 (citing *Katin*, 655 S.W.2d at 363). Despite the court's sweeping statement of the rule, it did not apply it in a sweeping manner, but merely asserted that the fact that Speer had not asserted the privilege in responding to requests for admission in "compliance with the law did not result in waiver of the right to assert the privilege as to other requested discovery." *Id.*

Speer, like Katin, had shown no reasonable expectation that his answering the requests for admission would reasonably subject him to criminal prosecution under the totality of the circumstances in his particular case. The law regarding the availability of the privilege had already been set out fully and accurately in the *Speer* opinion without any indication that the privilege does not apply to requests for admissions under any circumstances as a matter of law. *See id.* at 45–46. Thus, *Speer*, like *Katin* cannot reasonably be read as holding that the privilege

16

against self-incrimination does not apply to requests for admission regardless of the circumstances. Moreover, if it did, it would conflict with federal law as set out in *Moreno* and *Gordon*, both of which must be viewed as persuasive, with the United States Supreme Court cases cited above, and with *Denton*.

I would hold that *Katin* and *Speer* both stand for the proposition that the Fifth Amendment privilege against self-incrimination is available in a civil action where the trial court's careful examination of the totality of the circumstances demonstrates that the party invoking the privilege has not waived the privilege by offensive use or that the party is invoking the privilege because the party reasonably fears the answer would tend to incriminate him or would facilitate the preparation of a criminal case, or would perhaps lead to other evidence in any criminal action. *See Gordon*, 427 F.2d at 581.

This construction is supported by other Texas court of appeals cases construing the privilege as inapplicable only when it is not invoked in good faith, or to protect against a reasonable fear of self-incrimination, but to prevent discovery necessary to the development of the opposing party's case. *See Denton*, 897 S.W.2d at 760; *Marshall v. Ryder Sys., Inc.*, 928 S.W.2d 190, 195–96 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (upholding sanctions against plaintiff who used privilege against criminal activity offensively to refuse to answer request for admission concerning "other criminal activity" where assertion

17

of privilege would "deny appellees information crucial to their defense"); *Stewart v. Frazier*, 461 S.W.2d 484, 486 (Tex. Civ. App.—Dallas 1970, no writ) (holding that trial court properly deemed defendant's responses to requests for admission "admitted" because defendant's "real purpose in refusing to answer the request for admissions was, not to prevent being a witness against himself in a criminal prosecution, but to hinder [the plaintiff] in this common law damage suit from proving an essential element in his case").

The construction of *Katin* and *Speer* that Bernal urges—namely that the Fifth Amendment privilege against self-incrimination does not apply to requests for admission in a civil suit because, under Rule 198.3, the answers cannot be used in any other proceeding—is contrary to established law and leads to absurd consequences. Here, the trial court's blanket order denying the Fifth Amendment privilege to Ferguson—even in response to Bernal's requests that she admit each of the elements of guilt in the criminal charges brought against her and each of the elements of liability in his wrongful death suit—can be sustained only by a reading of *Katin* and *Speer* that is unreasonable in the context of those cases themselves, is contrary to established federal and Texas Supreme Court law, and has the absurd consequence of rendering the federal and state constitutional privilege against self-incrimination unavailable as a matter of law in response to requests for admission in a civil suit brought in Texas state court. Thus, I would hold that the trial court's

18

blanket order denying the privilege is arbitrary and unreasonable and, therefore, a clear abuse of the court's discretion. *See Walker*, 827 S.W.2d at 839 (holding that trial court clearly abuses its discretion if it reaches decision so arbitrary and unreasonable as to amount to clear and prejudicial error of law).

## Conclusion

I would grant the petition for writ of mandamus and would direct the trial court to vacate its order. I would issue the writ only if the trial court failed to do so.


Evelyn V. Keyes
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Keyes.

Chief Justice Radack, concurring in result only.

Justice Keyes, dissenting.